Harry Taub and Jennie Taub v. Commissioner.
Taub v. Commissioner
Docket No. 4199-69.
United States Tax Court
T.C. Memo 1971-155; 1971 Tax Ct. Memo LEXIS 178; 30 T.C.M. (CCH) 669; T.C.M. (RIA) 71155; June 28, 1971, Filed. *178 Held: The entry of an indebtedness owing by a corporation to the petitioners by an accountant preparing the corporate return does not constitute "other property" within the meaning of sec. 351(b). Consequently the petitioners received only the capital stock of the corporation as consideration for the transfer of realty to that corporation, and the transfer qualifies for nonrecognition treatment under sec. 351(a). Jack N. Honart, 11 Commerce, Newark, N. J., for the petitioners. James A. McNabb, Jr., for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent has determined deficiencies in the income taxes of the petitioners as follows: Amount of
Year
Deficiency
1962
$26,780.15
1963
754.94
1964
1,142.38
Petitioners have conceded the issues of gain on the liquidation of the corporation herein involved in the taxable year 1963 in the amount of $2,884.17. The issues of depreciation in the taxable years 1962 and 1963 and gain on sale of properties in 1964 are technical adjustments the disposition of which will be determined by the resolution of the only issue presented for decision. The only issue presented for decision is whether petitioners received "other *179 property" within the meaning of section 351(b) [1] upon the transfer of certain real property to Buat, Inc., in exchange for its stock. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The petitioners, Harry Taub and Jennie Taub (hereinafter referred to as "petitioners"), are individuals, husband and wife, whose legal residence at the time of the filing of the petition herein, and at all times material hereto, was in Plainfield, New Jersey. For the taxable years here in issue (1962, 1963, and 1964), petitioners filed joint Federal income tax returns with the district director of internal revenue at Newark, New Jersey. For more than 6 months prior to January 4, 1962, petitioners had owned, as tenants by the entireties, three parcels of improved real estate. These parcels of real estate constituted rental properties and are situated, respectively, at 310 West 7th Street, 435 West 8th Street, and 612 Madison Avenue, Plainfield, New Jersey. On January 4, 1962, petitioners organized *180 a corporation known as Buat, Inc. (hereinafter sometimes referred to as "Buat"). Buat was organized for the purpose of acquiring and operating the rental properties referred to above. Each of the petitioners received one-half of the outstanding capital stock of Buat. Petitioner Harry Taub became president of the corporation. On the same date, January 4, 1962, concurrently with the incorporation of Buat, petitioners transferred to Buat the three properties referred to above. In April of 1963, Mr. Horace J. Waldman (hereinafter referred to as "Waldman"), a certified public accountant, was retained to prepare income tax returns for Buat for the taxable year 1962, which returns were due to be filed March 15, 1963. Waldman was also retained to prepare income tax returns for the petitioners as individuals. A single entry cash receipts and disbursements book and a separate checking 670 account were maintained by petitioner Harry Taub on behalf of Buat. All other corporate bookkeeping was the responsibility of Waldman. However, other than the balance sheets and work papers which Waldman prepared for utilization, there were no formal books and records. Waldman was given full authority by petitioner *181 Harry Taub to use his own judgment in the preparation of the tax returns. Initially, under Waldman's direction, a request for an extension of time within which to file Buat's return was made with the local district director's office. The request was denied and the corporation filed a delinquent return in July of 1963. At the time he was retained by Buat to prepare its 1962 income tax return, Waldman prepared an opening balance sheet representing the financial condition of Buat on January 4, 1962, the date of incorporation. This balance sheet, prepared approximately 15 months after the date of incorporation, listed as total corporate assets the realty transferred to it by petitioners, valued at $120,316.70. Such total assets were balanced by a "[loans] from stockholders" account in the amount of $60,316.70, and a "capital stock" account in the amount of $60,000 for total liabilities and paid-in capital of $120,316.70. Waldman created this capital structure in order to provide Buat with "locked-in capital" represented by the value of the capital stock, and with "unlocked capital" in the form of the "[loans] from stockholders" account, the purpose of the "unlocked capital" being to allow *182 the petitioners to "draw off * * * future accumulated unneeded cash or cash assets * * * without an immediate tax impact * * *." However, the loan account was utilized by Waldman, solely as a means of effecting a balance adjustment so as to balance the year-end balance sheet. Waldman did not discuss the creation of this capital structure for the corporation with petitioners and petitioners were not aware of it. At the time the corporation return for 1962 was prepared for Buat, Waldman entered on the return an entry captioned "[loans] from stockholders" at $58,230.87. The corresponding entry in the 1963 return listed "[loans] from stockholders" at $55,011.25. The tax returns of the corporation for both 1962 and 1963 were signed by petitioner Harry Taub as president. Ultimate Findings of Fact The petitioners received only the capital stock of Buat as consideration for the transfer of realty to that corporation because the entry of an indebtedness owing by the corporation to the petitioners by the accountant preparing the corporate return does not constitute other property within the meaning of section 351(b). Opinion Section 351(a) [2] provides, generally, that no gain or loss is to be *183 recognized on the transfer of property solely in exchange for stock or securities of the corporation if immediately after the exchange the transferor of the property is in control of the corporation. However, where the transferors received "other property" (otherwise known as "boot") on the exchange, section 351(b) [3] *184 requires that the realized gain to the transferors be recognized to the extent of the fair market value of the "other property" received. Respondent argues that in addition to the stock of Buat, petitioners received "other property" within the meaning of section 351(b) in consideration for the transfer of realty to the corporation. Respondent contends that such "other property" consisted of an obligation due petitioners from Buat in the amount of $60,316.70 as represented by a "[loans] from stockholders" entry made by an accountant on the corporate tax returns filed 18 months after the corporation was formed. In essence, the respondent argues that the loan account was an open drawing account received by petitioners from Buat in exchange for the 671 realty transferred to the corporation. Cf. Harrison v. Commissioner, 235 F. 2d 587 (C.A. 8, 1956), affirming 24 T.C. 46 (1955), certiorari denied 352 U.S. 952 (1956). Petitioners contend that an accounting entry made by an accountant in the preparation of the corporate tax returns 18 months after the corporation was formed does not represent "other property" within the meaning of section 351(b) and that their transfer of realty to the corporation qualified for the nonrecognition *185 treatment established by section 351(a). We agree with the petitioners. The corporation was formed on January 4, 1962. On that date, the petitioners transferred real estate to the corporation and the petitioners each received one-half of the capital stock of the corporation. At that time, no loan or other evidence of indebtedness was created. In addition, the corporation never authorized or took any action to create any indebtedness, no note was ever executed, and no interest was ever established or paid. The due date for the filing of the corporation's first income tax return was March 15, 1963. In April of 1963, the corporation engaged an accountant for the first time to prepare the corporate return and the return of the petitioners. During the preparation of the corporate return, the accountant, Waldman, created the entry "[loans] from stockholders" and in July, 1963, the corporate return was filed with this entry. Other than the separate checking account and single entry cash receipts and disbursements book maintained by petitioner Harry Taub, and the balance sheet and working papers prepared by the accountant solely for utilization in the preparation of the corporate returns, *186 there were no formal books and records. The petitioners were not aware of this entry until it was brought to their attention by the respondent's revenue agent at the time of an examination 2 years later. There has been no demonstration that any withdrawals were made against the account. Rather, petitioner Harry Taub was charged with reasonable compensation for withdrawals during the year, and the loan account was utilized by the accountant as a balancing entry to bring the assets and liabilities into balance at the year's end. In these circumstances, we cannot find that the entry of an indebtedness by an accountant making out the corporate return gave rise to "other property" within the meaning of section 351(b). Respondent contends that in reaching this decision, we are ignoring the established rule which binds a principal to the acts of his agent who is acting within the scope of his authority and to the tax consequences of those acts. See Raymond Bauschard, 31 T.C. 910 (1959), affd. 279 F. 2d 115 (C.A. 6, 1960). Again, we must disagree with the respondent. The accountant, Waldman, was retained more than 15 months after the formation of the corporation and approximately 1 month *187 after the due date for the filing of the 1962 corporate income tax returns solely for the purpose of preparing and filing the income tax returns of the corporation and the petitioners. The agency relationship being limited to this purpose, the accountant had absolutely no independent authority to bind petitioners to a loan obligation or to create a capital structure for the corporation and he could not do so merely through the creation of an accounting entry. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) General Rule. - No gain or loss shall be recognized if property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * * ↩
3. SEC. 351(b). Receipt of Property. - If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then - (1) gain (if any) to such recipient shall be recognized, but not in excess of - (A) the amount of money received, plus (B) the fair market value of such property received; and (2) no loss to such recipient shall be recognized.↩